# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3479-17T2

IN THE MATTER OF THE
EXPUNGEMENT OF THE
INVOLUNTARY CIVIL
COMMITMENT RECORDS
OF T.B.

_____

Submitted April 30, 2019 – Decided May 23, 2019

Before Judges Hoffman and Enright.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Docket No. L-4508-17.

Matthew Blake Lun, attorney for appellant.

Respondents have not filed briefs.

PER CURIAM

T.B. appeals from a February 21, 2018 Law Division order denying his petition to expunge records pertaining to his involuntary civil commitment in the Ancora Psychiatric Hospital (Ancora). We affirm.

In January 1984, T.B. woke up in a holding cell in New York City, unable to remember the circumstances surrounding his detention or even why he was in

the city. Police brought T.B. to a hospital for psychiatric evaluation, which resulted in his three-week commitment at Ancora. After his discharge, T.B. voluntary committed himself to Pennsylvania Hospital for three months to wean himself off medication prescribed to him during his stay at Ancora.

T.B. did not experience any psychotic episodes after leaving Pennsylvania Hospital. He worked various jobs until he graduated from college in 1997. He then began working as an accountant for the State of New Jersey, where he remains employed.

In 2017, T.B. filed a petition to expunge his involuntary commitment records so he can purchase a gun, work at the Department of Corrections, or move to Australia. In support of his petition, T.B. presented illegible medical records pertaining to his commitment at Ancora, notes indicating that certain records from Ancora and Pennsylvania Hospital no longer exist, affidavits from seven individuals attesting to his good standing in the community, a criminal background check, and a recent psychological evaluation report.

After conducting a hearing and reviewing the evidence, the motion judge could not find T.B. unlikely "to act in a manner dangerous to the public safety" and could not conclude that expunging T.B.'s civil commitment records was "not contrary to the public interest." N.J.S.A. 30:4-80.9. The judge predicated

2    A-3479-17T2

these conclusions on her negative assessment of T.B.'s credibility and the insufficient evidence surrounding the incident leading to T.B.'s involuntary commitment and the involuntary commitment itself. Additionally, T.B.'s psychological evaluation report suggested T.B. still experiences mental health issues. The judge thus denied T.B.'s petition.

On appeal, T.B. raises four arguments: (1) the motion judge erred in concluding T.B. failed to present credible evidence of his mental health history and the reasons for his commitment because those records either do not exist or are illegible; (2) the denial of his petition renders expungement unavailable to all petitioners who cannot obtain records through no fault of their own; (3) the trial judge wrongfully viewed his testimony as not credible, and any inconsistencies the judge found actually had support in the documentary evidence; and (4) the motion judge erred in finding the psychological evaluation report failed to show T.B. was not likely to act in a manner dangerous to the public safety and failed to show expungement was not contrary to the public interest.

We review the trial court's interpretation of the statute governing expungement of mental health records de novo. State v. Gandhi, 201 N.J. 161, 176 (2010). However, we defer to a motion judge's fact findings because he or

she has the "opportunity to hear and see the witnesses and to have the 'feel' of the case, which [we] cannot enjoy." In re Civil Commitment of R.F., 217 N.J. 152, 174 (2014) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). "Assuming no error of law, we defer to a trial court's exercise of discretion so long as it was not 'clearly unreasonable in the light of the accompanying and surrounding circumstances . . . .'" In re LoBasso, 423 N.J. Super. 475, 496 (App. Div. 2012) (quoting Smith v. Smith, 17 N.J. Super. 128, 132-33 (App. Div. 1951)).

T.B.'s first two arguments fail because the judge relied upon more than simply T.B.'s inability to produce particular records. The judge pointed to T.B.'s failure to explain the events leading to his involuntary commitment and his inability to recall any of the details surrounding his involuntary commitment, such as the doctors who treated him or the medications they prescribed to him. T.B. had the opportunity to supplement the missing medical records through his testimony and the psychological evaluation report, but still neglected to provide this information. Thus, the motion judge could not consider the circumstances surrounding the commitment or T.B.'s mental health record.

As to T.B.'s third argument, even assuming the motion judge overstepped her bounds in characterizing portions of T.B.'s testimony as inconsistent, the judge did not base her credibility assessment solely on these alleged

inconsistencies. The judge discussed how T.B.'s demeanor during his hearing led to her conclusion. T.B. spoke flatly, failed to make eye contact, repeated himself, talked to himself, showed inappropriate emotion, and rambled incoherently. We defer to this determination because the motion judge actually observed T.B. deliver his testimony.

Lastly, T.B. focuses on the motion judge's statement that the psychological evaluation report "failed to demonstrate the proper statutory standard was met." Even though the report did not state T.B. was not a danger to the public and the public interest supported expunging his records, he argues these conclusions naturally flow from it. However, the motion judge's issue with the report was not that it failed to state the conclusions required by statute for expungement, but rather that the evidence within the report did not satisfy the statutory requirements. The report indicated T.B. repeatedly tried to portray himself in a positive light rather than answering the psychologist's questions forthrightly. The report also demonstrated that T.B. lacks interpersonal skills, has few outlets to cope with stress, possesses a diminished capacity to form close relationships, and has a propensity for depression. Based on this evidence, the motion judge set forth a reasonable basis for rejecting the psychologist's conclusion that T.B. is "psychologically stable and possesses the psychological

characteristics to carry a weapon, work in the federal government, and/or move to Australia."

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION